## SHARON FIRE BRICK CO. v. MILLER.

(Circuit Court of Appeals, Third Circuit. September 27, 1910.)

### No. 25, March Term, 1910.

MASTER AND SERVANT (§§ 221, 289*)—MASTER'S LIABILITY FOR INJURY TO SERVANT—ASSUMPTION OF RISK.

An employé, engaged in loading stone on the cars at the defendant's quarry, was struck and fatally injured by the derrick boom, by means of which the stone was being hoisted, by the breaking of the cable sustaining the boom. The deceased had noticed and reported to the foreman on Saturday, preceding the Monday on which the accident occurred, that the cable was frayed, and on investigation it was found that one strand had been cut or broken. The foreman stated his intention of fixing it on Monday morning, but delayed doing so, and under press of work continued to use the derrick as it was, cautioning the deceased, however, not to get under the boom. There was a tag rope attached to the end of the boom, by which it could be guided, without the necessity for going under it, and this was always used when stone was being lifted out of the quarry, and also at times when stone was being taken off of the ground to be loaded on the cars, but not, as a rule, after the stone had been lowered, and was being set in place on the car; the stone, if it needed to be shifted, being then more conveniently steadied by hand, and the boom, even if it came down, being over the center of the car, involving no danger. This tag rope was not used on the occasion of the accident. The deceased and the man working with him having merely to raise the stone a little and shove it over by hand as they stood beside it, *held*, that whether the deceased was guilty of contributory negligence in not moving the stone by means of the tag rope was a question for the jury, the way the stone was being handled not only being the most convenient, but the customary way of doing so, and not being ordinarily or obviously attended with danger, no one, as a rule, being required to be wise above the custom of the business. But there was an extra hazard by reason of the defect in the cable, and the deceased having discovered and reported the defect, and knowing that it had not been repaired, and the danger arising from it being obvious, he assumed the risk, and binding instructions should therefore have been given for the defendant.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 638–647, 1089–1132; Dec. Dig. §§ 221, 289.*

Assumption of risk incident to employment, see note to Chesapeake & O. R. Co. v. Hennessey, 38 C. C. A. 314.]

In Error to the Circuit Court of the United States for the Western District of Pennsylvania.

Action by one Miller against the Sharon Fire Brick Company. Judgment for plaintiff, and defendant brings error. Reversed.

A. O. Fording, for plaintiff in error.

---

Before LANNING, Circuit Judge, and BRADFORD and ARCHBALD, District Judges.

ARCHBALD, District Judge. The court below somewhat seriously confused in its charge the distinction between contributory negligence and assumption of risk, and the defendants would be entitled to a reversal and the granting of a new trial in consequence, except as we feel compelled to go further and hold that, on the undisputed evidence, the defendants were entitled to binding instructions, and, these having been refused, to judgment non obstante veredicto, on the point reserved.

Thomas Miller, the plaintiff's son, by reason of whose death this suit is brought, was killed while at work loading stone onto a car by means of a derrick at the defendants' quarry. The accident occurred on Monday, and it had been noticed on the preceding Saturday, by the deceased, who called it to the attention of Bailey, the foreman in charge, that the cable which held up the boom of the derrick was wearing or being cut on something, making it dangerous to work with. The cable was a new one, and the same day a man was sent up by Bailey to inspect it and see what was cutting it. He reported, in the hearing of Miller, that a strand was broken, but that he could not find the cause of it; and it being at the close of the day, Saturday, and the day being also pay day, the matter of fixing the cable was put over until Monday. On Monday the derrick was used by Bailey for hoisting stone, without the cable having been fixed; but he was careful to let no one else handle it, and warned Miller under no circumstances to go under it. After dinner he took out the tools to fix the cable, all that was necessary being to cut off the bad end of it; but he was interrupted by other matters, and there being a car there waiting to be loaded with stone to go to the gangway, where the work was going slow, Miller, of his own motion, with the help of a man named Jermyn, went to work to load the car by means of the derrick. They had put on two stones, and had a third nearly disposed of, when, finding that it needed to be moved slightly to bring the end in line with the others, a signal was given to Bailey, who was running the derrick, to raise the stone a little, when the cable snapped and the boom fell, striking Miller, who ran under it, and so injuring him that he died a week later. There was a tag rope attached to the end of the boom, by which it could be guided without the necessity for going under it; and this was always used when stone was being lifted out of the quarry, and also at times when stone was being taken off of the ground to be loaded on the cars, but not, as a rule, after the stone had been lowered and was being set in place on the car, the stone, if it needed to be shifted, being then more conveniently steadied by hand, which, even if the boom came down, as it was over the center of the car, involved no danger. This tag rope, for the reasons given, was not used on the occasion in question; the stone which Miller and Jermyn were handling having merely to be raised up a little, and shoved over by hand as they stood beside it. Neither of them was immediately under the boom when the cable broke; but hearing it snap,

and knowing that the boom was about to fall, Miller jumped one way, and Jermyn the other, Miller unfortunately jumping towards the boom and being struck by it.

Whether the deceased was guilty of contributory negligence, as contended, in not moving the stone by means of the tag rope, was a question for the jury, and their disposition of it, after appropriate instructions, would be conclusive. The way the stone was being handled was not only the most convenient but it was the customary way, and not being ordinarily or obviously attended with danger, it cannot be said, as a matter of law, that in not using the tag rope, so as to stand at a distance, Miller was so clearly negligent that there can be no recovery. Always, no doubt, there is a certain amount of peril in working under the boom of a derrick. But it apparently was not so imminent, with regard to this one, as to induce the men who worked about it to use the tag rope when they merely had to adjust a stone on the car, and no one. as a rule is required to be wise, in any case, above the custom of the business. Except for the weakened condition of the cable, the risk that the deceased ran was a risk of the work in which he was engaged, as it was ordinarily performed, and the exposure of himself to it did not thus necessarily constitute contributory negligence. Kreigh v. Westing House, 214 U. S. 249, 29 Sup. Ct. 619, 53 L. Ed. 984.

But there was an extra hazard on the occasion of the accident, by reason of the defect in the cable, and such as it was the deceased, under the circumstances, assumed the risk of it. It was he that discovered and reported the defect, and, of course, he therefore knew of it. He knew, also, that it had not been repaired, whatever had been said by the foreman about doing so the first thing Monday morning. And the danger of working under the boom, in the condition in which it was, was certainly obvious. He was thus affected with the established doctrine that where an employé has knowledge of a defect and the danger arising from it, or where both are so manifest that he must have known of them, he is conclusively presumed to have assumed the attendant risk, and cannot recover if it goes against him. Butler v. Frazee, 211 U. S. 459, 29 Sup. Ct. 136, 53 L. Ed. 281. If the attention of the employer is called to the defect, and the employé is assured, by some one authorized to speak, that the defect will be remedied, he is entitled to rest on this assurance for a reasonable time, and if he keeps on, either voluntarily or by the direction of his employer, and is injured, the employer is liable. But the direction, even so, must be of such a character that the employé had the right to assume that it was the intention of the employer to carry the risk up to the time of the accident. McGill v. Traction Co., 79 Ohio St. 203, 86 N. E. 989, 19 L. R. A. (N. S.) 793, 128 Am. St. Rep. 705. And there is nothing on which to base an assumption of that kind here.

It is true that Bailey, the foreman, expressed his intention to fix the cable the first thing Monday morning, and that he got out his tools to do so, and that without this having been done, the derrick, under the press of business, continued to be used up to the time of the accident. But the statement of Bailey, that he would fix the cable on Monday,

carried with it no direction or suggestion to Miller that he should go on and use it as it was in the interval; and it was entirely of his own motion that he undertook to do so. Bailey also, while it was being used that morning, was particular not to let any one work under the derrick, and twice cautioned Miller that if he (Bailey) was called away, whatever he did, to keep from under the boom. There was thus no promise or assurance to the deceased, leading him to go on and use the derrick in its crippled condition; but, on the contrary, there was an express warning against the very danger that overtook him, which, had he observed, there would have been no difficulty. The defect, therefore, being known, and the danger from it obvious, the deceased, in making use of the derrick as he did, must be held to have assumed the risk involved in it, and the court upon this ground should have directed a verdict.

The judgment is reversed, and the case is remanded, with directions to enter judgment for the defendants, on the point reserved, non obstante veredicto.